UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SARAH POBIECKE,

          Plaintiff,

          Case No. 21-cv-0002-bhl

  v.

WASHINGTON COUNTY, et al.,

          Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

      On December 2, 2019, Plaintiff Sarah Pobiecke received a letter informing her of Washington County's decision to terminate her employment. The letter read simply: "This termination is a result of violation of our County Code of Ethics." (ECF No. 43-9.) But Pobiecke suspected a more sinister motive. She filed this lawsuit alleging violations of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), and the Wisconsin Fair Employment Act (WFEA). She also lodged a wrongful termination claim based on a state public policy exception to Wisconsin's general at-will employment doctrine. Defendants have moved for summary judgment on all claims. Because no reasonable jury could find in Pobiecke's favor, the motion will be granted.

### BACKGROUND

      On August 5, 2019, Deputy Director for the Washington County Planning and Parks Department Debora Sielski hired 40-year-old Sarah Pobiecke as a part-time Planning and Parks Analyst. (ECF No. 52 at 1-2.) On her first day, Sielski introduced Pobiecke to fellow employee Paul Sebo as her "permanent analyst" in a tone that Pobiecke recalls as both sarcastic and somehow implicative of ageism. (ECF No. 47-1 at 107-08.) Pobiecke also remembers Sielski and Director of Community Development Jamie Ludovic dubbing her late-in-life career transition from substitute teacher to Parks Department employee "strange." (*Id.* at 111-12.)

      Strange or not, the transition was without question short-lived; Pobiecke's county employment lasted only four months, a period she insists was marred by unfair treatment. (ECF

No. 53 at 22.) She complains that Sielski singled her out for violations of the County's internet usage policy, (ECF No. 47-1 at 100-101), and refused to assign her an Adobe software license she claims she needed to complete some of her work. (ECF No. 53 at 6-7.)

Pobiecke's work often involved implementing the Washington County Board of Supervisors' Parks and Open Space Plan (POSP). (ECF No. 52 at 13.) During her short tenure, as part of the POSP, the Board considered construction of a bike and pedestrian trail, which Sielski asked Pobiecke to draw on a map, adjusting as necessary to minimize adverse environmental impact. (*Id.* at 5-6.) Pobiecke adjudged that goal unattainable because any trail would inevitably encroach on protected land but offered to complete the task anyway. (ECF No. 53 at 8.) Sielski declined and instead completed the project herself without further assistance. (*Id.* at 9.)

On November 19, 2019, the Parks and Open Space Plan Technical Advisory Commission (POSPTAC) met to discuss the POSP's development and implementation. (ECF No. 52 at 13.) Pobiecke attended to assist Sielski with a PowerPoint presentation and was also present for a closed session during which the POSPTAC discussed confidential information. (*Id.* at 14-15.) During this closed session, Pobiecki became concerned that Sielski had presented some of the confidential information in a misleading way, potentially causing otherwise environmentally conscious POSPTAC members to approve detrimental land acquisitions. (*Id.* at 16.) Acting on these concerns, Pobiecke contacted Cindy Leinss, a POSPTAC member representing the City of West Bend. (*Id.* at 16-17.) During their telephone conversation, Pobiecke cited the Board's proposed bike trail as an example of a project that warranted further scrutiny. (*Id.* at 17-19.) She also referred to confidential information from the closed session. (*Id.* at 19.)

Unfamiliar with Pobiecke and unaware that she worked for the Planning and Parks Department, Leinss feared that the contents of the POSPTAC's closed session had leaked to the public. (ECF No. 53 at 18.) She alerted Sielski who asked Leinss to put her story in writing. (*Id.*) In a follow-up email, Leinss identified the concerned citizen as she has spoken with as "Sarah Beth Pobi." (ECF No. 43-7 at 1.) After receiving the email, Sielski met with Pobiecke, who confirmed she had in fact called Leinss to raise her concerns with Sielski's handling of the closed session. (ECF No. 52 at 21.) After consulting with Human Resources Generalist Erin Jasinski and Director Ludovic, Sielski concluded Pobiecke's actions violated the County Code of Ethics and warranted termination. (*Id.* at 23.) Pobiecke learned of her termination in a letter dated December 2, 2019. (ECF No. 53 at 22.)

## LEGAL STANDARD

"Summary Judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

Pobiecke's amended complaint alleges: (1) gender discrimination under Title VII of the Civil Rights Act; (2) age discrimination under the Age Discrimination in Employment Act; (3) wrongful termination; and (4) retaliation under the Wisconsin Fair Employment Act. (ECF No. 16 at 6-11.) Defendants have moved for summary judgment as to all four claims. Pobiecke's response addresses only the gender and age discrimination claims, while suggesting the remaining claims were already resolved (in an earlier order issued *before* the amended complaint was even filed.) (ECF No. 48 at 30.) This omission is of no moment, however, as the record confirms that Defendants are entitled to summary judgment on all claims.

**I.     Pobiecke Has Not Produced Evidence that Would Permit a Reasonable Factfinder to Conclude that Her Gender or Age Caused Her Discharge.**

Pobiecke argues that she suffered multiple adverse employment actions because of her gender and age. Though Title VII and the ADEA involve different causation standards, courts approach claims raised under both statutes similarly. *See Carson v. Lake Cnty., Ind.*, 865 F.3d 526, 532-33 (7th Cir. 2017). At summary judgment, the dispositive question "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

### A. On This Record, No Reasonable Factfinder Could Conclude that Pobiecke's Gender Caused an Adverse Employment Action.

Pobiecke identifies two examples of what she calls gender-based discrimination, but even read in their most nefarious light, neither supports a Title VII claim. The first centers on Sielski's allegedly selective and discriminatory enforcement of the County's Computer, Electronic, and Telephonic Media policy. (ECF No. 53 at 7.) According to Pobiecke, Sielski forbade her from making personal use of the County's internet during her breaks even though similarly situated male employees were permitted to stream YouTube, watch SNL clips, and check sports scores at work. (*Id.*) This theory stumbles out of the starting gate; an employee forbidden from checking Brewers scores while on the job has not suffered an adverse employment action within the meaning of Title VII. *See Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011) (explaining that adverse employment actions generally fall into three categories: (1) termination; (2) transfers that reduce career prospects; and (3) unbearable changes in conditions). And while selective enforcement of an employer's policy is, in some instances, indicative of discrimination, *see Baker v. Macon Resources, Inc.*, 750 F.3d 674, 677 (7th Cir. 2014), Pobiecke lacks proof of any selective enforcement. In fact, she admits that there is no evidence that Sielski knew of any male employee's internet misconduct. (ECF No. 47-1 at 100-102; *see Brown v. Wal-Mart Stores, Inc.*, 768 F. App'x 575, 577 (7th Cir. 2019) (holding that the plaintiff could not rely on a selective enforcement theory without evidence that the employer knew of the comparator's actions)).

Pobiecke's other evidence of gender discrimination is even weaker. She decries Sielski's decision to assign the County's only available Adobe suite license to male intern Cody Garcia. (ECF No. 53 at 5-6.) But while both Pobiecke and Garcia needed Adobe software for some of their work, it is undisputed that only Garcia had demonstrated proficiency with the relevant applications. (*Id.* at 5.) Sielski, therefore, chose to give Garcia the license but permitted Pobiecke to borrow it from him as necessary. (*Id.* at 6-7.) This is indicative of a rational resource management strategy, not invidious discrimination. It is also doubtful that the failure to provide an Adobe suite license counts as an adverse employment action. An employer may not "cause an employee's skills to atrophy and reduce future career prospects," *Barton*, 662 F.3d at 454, but skills cannot "atrophy" unless they existed in the first place, and Pobiecke's Adobe skills were undisputedly always lacking.

Further, neither of these theories has anything to do with the one adverse employment action Pobiecke actually suffered: termination. Sielski states that she fired Pobiecke for violations

of the County Code of Ethics Sections 40-4(A) and (F).  Pobiecke contends that these ethics provisions do not apply to her—both refer to employees acting in their own economic or personal interests, not the collective interest Pobiecke cites as her motivation.  (ECF No. 43-10 at 4.)  But even unimpeachable ethics cannot guarantee an at-will employee's inherently tenuous future.  Pobiecke worked at-will and her employer could thus terminate her "for good cause, for no cause, even for cause morally wrong, without thereby being guilty of a legal wrong." *Runzheimer Int'l, Ltd. v. Friedlein*, 862 N.W.2d 879, 889 (Wis. 2015) (internal quotations omitted).  She admits that her boss lost trust in her.  (ECF No. 52 at 21.)  That is already more than enough reason for discharge.  Whether Sielski mistakenly interpreted the Code of Ethics or used alleged violations thereof as a pretense for her true motivations is, thus, irrelevant, unless those motivations involved some proscribed discrimination, *e.g.*, discrimination based on gender.  And there simply is no evidence sufficient to permit a reasonable factfinder to conclude that Pobiecke's gender led to her discharge. *See Ortiz*, 834 F.3d at 765.  Her Title VII claim, therefore, fails.

### B. On This Record, No Reasonable Factfinder Could Conclude that Pobiecke's Age Caused an Adverse Employment Action.

As with her Title VII claim, Pobiecke has limited evidence of any alleged age discrimination.  She relies on: (1) the tone Sielski used to introduce her to a fellow employee; (2) Sielski's desire for a young heir apparent; and (3) Sielski's and Ludovic's comments about how strange it was that Pobiecke would want to switch careers so late in life.  (ECF No. 47-1 at 108, 110-12.)

Starting from the top, it is hard to fathom how Sielski could have delivered the line, "this is my permanent analyst" in a tone that a reasonable fact finder could determine meant: "this employee is too old, and I plan to terminate her based on her age and replace her with someone younger."  Discriminatory intent is rarely announced openly, but a factfinder should not have to engage in speculative, subtextual analysis to find it. *See Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1121 (7th Cir. 1998).  No reasonable jury could draw a discriminatory inference from a boilerplate introductory remark.

On the other hand, Sielski's desire to groom a younger successor does at least sound in the register of age discrimination.  But even so, the Seventh Circuit has confirmed that, "[i]n situations involving the simple termination of a single employee," to advance a claim of age discrimination beyond summary judgment, "normally the employee must establish that the employer *sought a younger replacement* for [the employee]." *Miller v. Borden, Inc.*, 168 F.3d 308, 313 (7th Cir.

1999) (emphasis in original). The record shows only that Sielski sought a younger replacement for *herself*, not Pobiecke. This distinction makes inferring age discrimination substantially harder. And Pobiecke has offered no evidence of her eventual replacement's actual age, leaving the requested inference entirely speculative. In addition, as a matter of logic, Sielski had no need to eliminate Pobiecke in order to hire a younger heir apparent; in fact, she hired the much-younger Garcia during Pobiecke's tenure. (ECF No. 47-1 at 110-11.) And according to Pobiecke's own testimony, Sielski's intended retirement was still a full *decade* in the offing. (*Id.* at 111.) Preparation is a virtue, but 10 years of foresight is too long a leap for a finder of fact to make. In short, none of the record evidence suggests Sielski's hopes for a young successor resulted in unlawful age discrimination against Pobiecke.

As for Sielski's and Ludovic's comments, they did call Pobiecke's decision to switch careers "strange." (ECF No. 47-1 at 112.) But that reflects the perceived novelty of a mid-life career shift, not any belief that, for instance, "you can't teach an old dog new tricks." *See, e.g.*, *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 671-72 (7th Cir. 1998). What Pobiecke needs is evidence "that age was the 'but-for' cause of" her termination. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 179 (2009). Two benign comments and a supervisor's desired succession plan (for herself) are not enough. Once again, Pobiecke's evidence fails to establish that her position in a protected category caused her discharge.

## II. Defendants Are Entitled to Summary Judgment on the Claims Pobiecke Did Not Address.

Defendants also seek summary judgment on Pobiecke's wrongful termination and retaliation claims. (ECF No. 39 at 14-20.) Pobiecke's response brief is silent as to both, though it is doubtful that any argument could salvage them.

### A. The Public Policy Exception to At-Will Employment Does Not Apply.

Pobiecke's amended complaint notes that the Wisconsin Supreme Court has recognized a limited public policy exception that curtails an employer's ability to fire an at-will employee on a whim. (ECF No. 16 at 8-9.) That is, "[a]n employer may not require an employee to violate a constitutional or statutory provision with impunity." *Brockmeyer v. Dun & Bradstreet*, 335 N.W.2d 834, 840 (Wis. 1983). "If an employee refuses to act in an unlawful manner, the employer would be violating public policy by terminating the employee for such behavior." *Id.* Based on the *Brockmeyer* exception, Pobiecke's complaint argues that she could not be fired for refusing to draw a bike trail through protected lands because to draw the trail would violate Wisconsin's well-

defined public policy of preserving public lands and natural resources. (ECF No. 16 at 8.) There are at least two problems with this theory. First, Pobiecke did not refuse to draw the trail. (ECF No. 52 at 28.) She voiced her objections but offered to continue. Second, she was not fired for refusing to draw the trail, but rather for violations of the County Code of Ethics. (*Id.* at 22.) The public policy exception does not apply to Pobiecke, so her wrongful termination claim fails.

### B. Pobiecke's Retaliation Claim Also Fails.

Pobiecke's amended complaint also alleges violations of Wis. Stat. Section 111.321, the Wisconsin Fair Employment Act (WFEA). (ECF No. 16 at 9.) As relevant here, the WFEA makes it unlawful to discharge an employee because the employee declines to attend an employer-sponsored meeting or to participate in any communication related to a political matter. (*Id.*) Pobiecke never declined to attend an employer-sponsored meeting, nor did she refuse to participate in communications related to a political matter. (ECF No. 39 at 18.) Even if she had, she did not exhaust her administrative remedies as the statute requires. Wis. Stat. §111.39(4)(b). There is no private right of action under the WFEA. *See Staats v. Cnty. of Sawyer*, 220 F.3d 511, 516 (7th Cir. 2000). This Court cannot create one. Thus, Pobiecke's retaliation claim must also be dismissed.

### CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment, ECF No. 38, is **GRANTED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 15, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge